## Boehm, Appellant, *v.* Philadelphia.

*Municipalities—Nuisance—Ordinance—Keeping hogs in city's limits.*

1. An ordinance of a city "declaring it to be a nuisance, and making it unlawful to keep hogs and swine in the city, except in certain limits; or in any part thereof, excepting in a sanitary manner; and providing penalties in violation of the ordinance," is a proper and legal ordinance, and is not rendered invalid by the fact that the ordinance prescribed the limits by the designation of certain streets or lines in which hogs may be kept, and forbidding them to be kept in other parts of the city.

2. A city by ordinance may prohibit the keeping of hogs in a section which theretofore was rural, and in which the business of raising hogs was harmless, but by reason of the city's progressive growth the locality has been changed by the general municipal development so that the vicinity is altered from rural to built up conditions.

Argued Oct. 22, 1914. Appeal, No. 185, Oct. T., 1914, by plaintiffs, from decree of C. P. No. 4, Phila. Co., Sept. T., 1913, No. 1,223, dismissing bill in equity in case of Elizabeth and Charles L. Boehm v. City of Philadelphia, Rudolph Blankenburg, Mayor et al. Before RICE, P. J., ORLADY, HEAD, KEPHART and TREXLER, JJ. Affirmed.

Bill in equity to enjoin the defendants from enforcing a city ordinance.

The material portions of the ordinance in question are as follows:

"It is hereby made unlawful and declared to be a nuisance to keep hogs or swine in any part of the city

of Philadelphia, except within the limits hereinafter described: provided, that this section shall not apply to hogs or swine kept at any licensed slaughter house for a period not exceeding five days, for the purpose of being killed for use as food. The limits within which hogs or swine may lawfully be kept in accordance with the provisions of this section shall be as follows:

"1. In that portion of the city between Penrose avenue and Thirty-first street, north on Thirty-first street to Maiden lane and on Maiden lane west to the Schuylkill river. . . .

"Section 2. It is hereby made unlawful and declared to be a nuisance to keep hogs or swine in any part of the city of Philadelphia excepting in a sanitary manner and so as not to be prejudicial to the health of the community.

"Section 3. Any person violating any of the provisions of this ordinance, or committing a nuisance as herein defined, shall be liable to a penalty of $25.00 for each offense, and to an additional penalty of $5.00 for each day during which such violation or the continuation of such nuisance may be persisted in after not less than ten days' written notice from the board of health to abate the same, to be recovered as fines and penalties of like amount are now by law recoverable."

Prior to the filing of the bill the city had recovered a judgment against the defendant for $25.00 for violation of the ordinance. The case had been appealed, but not finally decided.

It was not denied by the city that the defendant's business had been conducted under proper sanitary precautions, but it was shown that it was conducted in a prohibited portion of the city.

The court dismissed the bill.

*Error assigned* was decree dismissing the bill.

*Joseph M. Dohan*, with him *Maskell Ewing, Jr.*, and *V. Gilpin Robinson*, for appellants.—The keeping of

pigs is not a nuisance per se, nor is it a nuisance because prohibited, unless injurious to the public: Stockton Laundry Case, 26 Fed. Repr. 611; Pittsburg v. Keech, 21 Pa. Superior Ct. 548; Phila. v. Lyster, 3 Pa. Superior Ct. 475; Smith v. Cummings, 2 Pars. Eq. 92; Evans v. Reading Chemical F. Co., 160 Pa. 209.

The ordinance is invalid because councils cannot without legislative authority prohibit the keeping of hogs, and no such statutory authority has been granted: Stockton Laundry Case, 26 Fed. Repr. 611; Bryan v. Chester, 212 Pa. 259; Allegheny v. Heyl, 26 P. L. J. 70; Eddy v. Board of Health, 10 Phila. 94; Klingler v. Bickel, 117 Pa. 326; Hoffstat v. Voight, 146 Pa. 632; Phila. v. Lyster, 3 Pa. Superior Ct. 475; Evans v. Reading Chemical F. Co., 160 Pa. 210.

The ordinance is invalid because it is unreasonable and discriminatory: Commissioners, etc., of Northern Liberties v. Northern Liberties Gas Co., 12 Pa. 318; Millerstown Boro. v. Bell, 123 Pa. 151; Klingler v. Bickell, 117 Pa. 326; Livingston v. Wolf, 136 Pa. 519; Angle v. Stroudsburg Boro., 29 Pa. Superior Ct. 601.

*James Gay Gordon, Jr.*, with him *James M. Dohan*, assistant city solicitors, and *Michael J. Ryan*, city solicitor, for appellees.—The ordinance was valid: State v. Holcomb, 68 Iowa, 107; Ex parte Glass, 49 Tex. Crim. Rep. 87; Miller v. Syracuse, 168 Ind. 230.

That the keeping of hogs within the limits of a city is per se a nuisance, and as such is indictable and subject to abatement, has been decided in a number of cases: Com. v. Van Sickle, Brightly's Reports, 69; Com. v. Hutz, Brightly's Reports, 72; Com. v. Alden, 143 Mass. 113; Com. v. Perry, 139 Mass. 198; State v. Payson, 37 Maine, 361; State v. Kaster, 35 Iowa, 221.

OPINION BY ORLADY, J., April 19, 1915:

This appeal is taken by the plaintiffs from a decree made by the court below in dismissing a bill in equity

brought by them, to restrain the mayor and the director of the department of public health and charities of the city of Philadelphia, from enforcing an ordinance of the city "declaring it to be a nuisance and making it unlawful to keep hogs or swine in the city of Philadelphia, except within certain limits; or in any part thereof excepting in a sanitary manner; and providing penalties for the violation of the ordinance."

The learned judge correctly held that the only question presented for decision was "Is the ordinance of the city of Philadelphia adopted June 24, 1912, valid or not? If this is valid, the bill must be dismissed, because the maintenance of a piggery at the place where that of the plaintiff is located is plainly in contravention of it. If, however, the ordinance is without legal effect, the defendants should be restrained from efforts to enforce it."

In the opinion filed dismissing the bill the review of the statutory authority to enact the ordinance is so full and clear that it is not necessary to repeat it. The main contention of the appellants is that the ordinance is unreasonable and discriminating against them and their property, in that it fixes an arbitrary line or street beyond which it declares it unlawful for them to conduct their business, which is located immediately on the north of Maiden Lane, while it declares it to be lawful and permits others to keep pigs and pigpens immediately to the south of that street.

The ordinance defines by careful description five separate districts within which hogs or swine may lawfully be kept in accordance with its provisions, and by sec. 2, it is made unlawful and declared "to be a nuisance to keep hogs or swine in any part of the city except in a sanitary manner and so as not to be prejudicial to the health of the community."

The record concedes that the plaintiff's business of raising hogs is conducted under proper sanitary precautions, and the question is narrowed further; can the city by ordinance prohibit the keeping of hogs in a

section which theretofore was rural and the business of raising hogs was harmless, but by reason of the city's progressive growth, the locality is changed by the general municipal development so that the vicinity is altered from rural to built-up conditions?

The court aptly said: "Where town and country meet, they blend insensibly, and it is difficult to say where one leaves off, and the other begins. The line between them, however, must be drawn somewhere. In so doing the cases of particular persons cannot always be provided for, councils are not expected to do more than recognize general conditions."

It cannot be open to controversy that the keeping and raising of hogs under the most careful sanitation of pen and animal is likely to be offensive, and has a tendency to endanger the health and destroy the comfort of the residents in that vicinity. This is recognized by all authorities, and the keeping of hogs in the thickly built-up part of a city is held be to a nuisance per se, and as such is indictable and subject to abatement: Com. v. Van Sickle, Brightly's Reports, 69; Com. v. Hutz, Brightly's Reports, 72; 2 Wood on Nuisances, sec. 586; Com. v. Alden, 143 Mass. 113; State v. Parpar, 37 Maine, 361.

If the city councils have the right to prohibit the keeping of hogs in the built-up parts of the city, either as being a nuisance per se, or as a business strongly tending to produce a nuisance, the fact that the ordinance prescribes limits in which hogs may be kept, and forbidding them to be kept in other parts of the city, would not render it invalid.

The Consolidation Act of February 2, 1854, P. L. 44, authorizes councils "in enacting new ordinances to make such distinctions in the built-up and rural parts of the new city as they may deem required by circumstances."

The right to distinguish between the various sections of a municipality has been held to be within the power of councils, and not to be in violation of any constitu-

tional provision: Baldwin v. Philadelphia, 99 Pa. 164; Klinger v. Bickel, 117 Pa. 326. The councils have the undoubted right to anticipate reasonable development of property in a locality, and as stated in 2 Dillon on Municipal Corporations, 520, "The keeping of hogs and swine is a generally recognized subject of regulation by municipal ordinance. The legislature may authorize the board of health of a town to assign the place where swine may be kept and prohibit the keeping of swine elsewhere. Under the general welfare clause and the general authority to enact police ordinances, a city may prohibit the keeping of swine in particular districts. But any ordinance must stand the test of reasonableness." In State v. Holcomb, 68 Iowa, 107, the rule is stated, viz.: "The only question, therefore, is whether the regulation is reasonable. While ordinances which necessarily restrain trade, or operate oppressively upon individuals will not be sustained, yet such as are reasonably calculated to preserve the public health are valid, although they may abridge individual liberty and individual rights in respect to property." And in Com. v. Patch, 97 Mass. 221, it was held, "Before an ordinance or regulation of a board of health can be said to be unreasonable it should clearly so appear. The question should not remain doubtful and the exercise of the discretion necessarily reposed in the officers and boards of cities making regulations for the preservation of the health of inhabitants cannot be declared invalid unless it clearly so appears. A legal restraint may be imposed on the few for the benefit of the many." See also Miller v. Syracuse, 168 Ind. 230. The difference between a public nuisance and a private nuisance does not consist in any difference in the nature or character of the thing itself, but a nuisance is public when the danger is to the public, and private when the danger is to the individual as distinguished from the public. This ordinance makes it unlawful and declares it to be a nuisance to keep hogs or swine in any part of the city

except within the described limits, and the authority
to do this cannot be seriously challenged. The mere
fact that a certain thing is prohibited by ordinance does
not render it a nuisance, if it be not otherwise such, so
as to authorize an individual or even the city itself
to have it enjoined: Philadelphia v. Lyster, 3 Pa.
Superior Ct. 475, and while the inclusion in such an
ordinance of a declaration that the thing prohibited is
a public nuisance would not invalidate the ordinance
as a whole, it is equally clear that it would not make it
a nuisance if it was not so in fact: Pittsburg v. Keech,
21 Pa. Superior Ct. 548. Things which may or may
not be nuisances where their character in this respect
depends upon circumstances, cannot be so declared in
advance. The question when the thing may or may not
be a nuisance must be settled as one of fact and not of
law: 2 Wood on Nuisances (3d ed.), 977.

It must be kept in mind that there are some trades
so necessarily offensive that merely carrying them on
within the limits of a populous city is in itself a nuisance:
Com. v. VanSickle, 4 Claik, 81. If it is conceded that
councils had authority to district the city, and segre-
gate the pigsty farms in particular localities as defined
by streets, the same authority could be reasonably
asserted in the interest of the public health, in making
new districts or rearranging old ones as demanded by the
natural course of the development of the city, and re-
quire that the offensive and dangerous pigsties should
be moved farther away from the built-up locality. To
hold that the thing which was harmless in itself when
in the open country could not become harmful and sub-
ject to municipal regulation, if the march of develop-
ment would be in that direction, would be to hold that
the dead line of the advancing city's growth would
be marked by the earlier location of the pigsty. They
cannot exist together. When the dividing line between
the expanding city and the rural properties is reached
it becomes an important question for councils to decide

which shall have the superior right of locality; the pigsty industry because of its prior establishment, or the aggressive occupation of the theretofore rural property.

In Brady v. Weeks, 3 Barbour R. (N. Y.) 157, a slaughterhouse had been erected in the open fields, adjacent to a growing city, but not at that time near to any dwelling house, but afterwards, in the progressive increase of the city, dwellings were erected near to the slaughterhouse, and they were rendered unfit for comfortable habitation. It was held a nuisance, for which the owners of the houses might have remedy against the proprietors.

It is no defense to an action or prosecution for a private or public nuisance, that the work or business giving rise thereto was first established in a secluded locality, or was not a nuisance in its origin, but that the injury or offense complained of is the result of the subsequent voluntary location in the neighborhood by the person or persons injured, though with a knowledge of the existence of the alleged nuisance: 21 A. & E. Enc. of L. 691.

Formerly the contrary doctrine obtained on the ground that the complainants were in fault in coming to the nuisance. This doctrine is now very properly exploded, as it is manifest that an observance of it would interfere greatly with the growth of towns and cities: 2 Bouv. L. Dict., Nuisance and cases cited; State ex rel. v. Lederer, 52 N. J. Eq. 675.

All question of the powers of the board of health was eliminated in the argument and the only question considered is the validity of the ordinance.

Courts of equity will not, as a general rule, interfere by injunction to restrain the enforcement of ordinances enacted by proper authority upon the ground that such ordinances are alleged to be illegal, or for the purpose of determining the validity of the ordinance when the party has a complete and adequate remedy at law: 2 Wood on Nuisances, sec. 796a.

As stated by the court below, "The city has obtained a judgment against the plaintiffs in proceedings brought before a magistrate for the recovery of the fine provided for the breach of the ordinance referred to; but an appeal from this judgment has been taken and is still pending." So that the same question may be considered, or the trial of the issue raised on that appeal. The plaintiff is not entitled to equitable relief and the decree of the court below is affirmed.