## Township of Neshannock v. Bradley

*Homer C. Drake, Alvah M. Shumaker,* and *J. Glenn Berry,* for petitioner.

*Sherman K. Levine, Robert L. Wallace,* and *Wylie McCaslin,* for defendant.

BRAHAM, P. J., July 22, 1944.—Plaintiff, the Township of Neshannock, Lawrence County, Pa., seeks an injunction restraining defendant from operating an automobile junk yard in his present location on the Wilmington Road, or elsewhere in the township. The bill in equity, the amended bill, the answer, and amended answer disclose two main issues: First, is defendant's business at it has been conducted a nuisance in fact? second, is an ordinance adopted by the supervisors of plaintiff township under the Act of May

1, 1939, P. L. 41, forbidding the operation of automobile graveyards anywhere in the township, constitutional and applicable to defendant's business, which was established prior to the adoption of the ordinance? From the evidence we make the following

*Findings of fact*

1. Plaintiff is a township of the second class. On June 4, 1943, by virtue of authority granted by the Act of May 1, 1939, P. L. 41, plaintiff's supervisors adopted a resolution prohibiting "the accumulations of garbage and rubbish and the storage of abandoned or junked automobiles on private and public property" within the township.

2. Defendant is a resident of the township who has since about March 8, 1937, engaged there in the business of wrecking automobiles and selling parts, by which is meant that he acquires abandoned automobiles, wrecked automobiles, and automobiles no longer serviceable as vehicles, stores them on an open lot while he strips them of useful parts as he has demand for such parts, and ultimately breaks up and sells the residue for junk.

3. Defendant's auto wrecking business is and has been conducted on a leased lot on the east side of Wilmington Avenue about four hundred feet north of the city line of the City of New Castle. The lot has a frontage of about one hundred feet on the street and extends back about one hundred fifty feet to the rear where it is about two hundred feet in width.

4. Defendant leases this lot for $10 per month. On it he has erected a very small one-story cottage, without running water or other sanitary facilities, where he lives. Across from this lot he owns an automobile service station and is building a larger house.

5. Neshannock Township is a residential township. There are no industrial plants within its borders.

6. The highway running in front of defendant's premises is State Highway Route 18, known locally as

the Wilmington Road. It is three lanes wide and one of the principal roads leading to and from the City of New Castle.

7. The district about defendant's place of business is residential in character. There are a few neighborhood stores and service stations and a State highway garage some blocks to the north; but the area is essentially residential, is but a continuation of a portion of the city almost wholly residential, and leads to one of the choicest residential suburbs of the city.

8. The operation of defendant's business in the locality has constituted a nuisance in fact. It has customarily produced loud noises, threatening flames, clouds of smoke, noxious vapors, bad smells, breeding places for rats and other vermin, and a very unsightly condition.

9. Immediately south and east of defendant's lot is vacant land. If defendant's business be allowed to continue, the building of homes in this area will be discouraged, other businesses such as defendant's would be invited, and the whole character of the neighborhood changed.

10. Damage to the health, comfort, and peace of the nearby residents of the township and a depreciation in the value of nearby real estate have resulted and will result from the continued operation of the business.

11. Plaintiff has not been guilty of laches in asserting the rights of the citizens of the township. No harm has resulted to defendant from the delay.

### Discussion

Our finding that the operation of defendant's business in its present location constitutes a nuisance in fact is decisive of the principal questions in the case. This conclusion is amply warranted by the evidence.

The residential character of the neighborhood is clearly apparent from the evidence. The few community stores and service stations do not destroy this essential character: Calvary Presbyterian Church of

Highland Park et al. v. Jones et al., 322 Pa. 77, 80. The residential character of the district was fixed long before defendant began his business there, always an important consideration: McKees Rocks Borough et al. v. Rennekamp Supply Co. et al., 344 Pa. 443. The evidence shows that within a half mile radius of defendant's place there are, outside of the limits of New Castle, 194 houses and 8 business places. If the portion of the city within the half-radius be included there are 177 additional homes and one additional business place. Remembering that this entire district grew up spontaneously without the stimulus or the control of the law as to the type of occupancy, the conclusion is inevitable that citizens built their homes there believing that they were in a truly residential section. The two stores were more community centers than discordant factors.

Into this halcyon scene came defendant with his junk yard. He began in a small way with a few cars but his business grew until he had 75 or more. It was very unsightly. Unsightliness, although not of itself sufficient to constitute a nuisance, may be considered with other elements: Parkersburg Builders Material Co. et al. v. Barrack, 118 W. Va. 608, 191 S. E. 368, 110 A. L. R. 1454; Yeager et al. v. Traylor, 306 Pa. 530. But disadvantages much more grievous had to be borne. Parts had to be taken off the wrecks by day and night. This resulted in noise and disturbance. When everything usable had been removed the automobiles and fragments were piled up, covered with gasoline and fired. Clouds of smoke billowed through the neighborhood raining soot on the washings of the housewives and bearing the odor of burnt hair, burnt varnish, and the like throughout. The labor of cutting up the residue was noisy. Rats congregated in the piles of debris. Defendant's witnesses who testified there was no smoke, no soot, no noise, were not convincing. Most of them seemed to be interested in some way in the junk business. One rather naive witness said her chil-

dren made so much disturbance she did not notice the junk yard.

Many of the circumstances disclosed in this case appear in Morgan et al. v. Zuckerman et al., 23 D. & C. 199, where, as here, nuisance in fact was found and the operation of the junk yard enjoined. In Rebman et al. v. Murry et al., 46 Lanc. L. Rev. 117, an injunction was granted on the probability that some of these evil results would follow. Jordan v. Luippold et al. (Okla.), 114 P.(2d) 917, is another case where an injunction was granted because the operation of a junk yard was a public and private nuisance.

Of course, one must admire the spirit and the industry of the man who builds a business where none was before, but it is still the law that where conflict arises between the right of a man to use his property in some profitable way, although it hurts his neighbors, and the right of those neighbors to be secure in their persons and property from unwarranted invasion, profit-making must give way to the peace and security of others: Nesbit v. Riesenman et al., 298 Pa. 475, 281 U. S. 754. As was said in Edmunds et al. v. Duff et al., 280 Pa. 355:

"No man has a right to take from another the enjoyment of the reasonable and essential comforts of life and, consequently, cannot commit acts on his own premises calculated to interfere with the reasonable enjoyment by others of their homes." (syllabus)

Defendant's stoutest efforts are reserved for opposition to the application of the Act of May 1, 1939, P. L. 41. By section 702(XII) of The Second Class Township Law of May 1, 1933, P. L. 103, the township supervisors of second class township were empowered, inter alia, "To prohibit accumulations of garbage and rubbish on private and public property, and the carrying on of any offensive manufacture or business . . ." By an amendment adopted May 1, 1939, P. L. 41, 53 PS §19093, 702(XII), this section was amended to read as follows:

"To prohibit accumulations of garbage and rubbish, and the storage of abandoned or junked automobiles, on private and public property, and the carrying on of any offensive manufacture or business; and to remove any nuisance or dangerous structure on public or private grounds after notice to the owner to do so, and, in his default, to collect the cost of such removal, together with a penalty of ten dollars from the owner by summary proceedings. In the exercise of the powers herein conferred, the township may institute proceedings in courts of equity."

To begin with, our finding of a nuisance in fact disposes of much of this problem because the nuisance is cognizable at common law without reference to the statute. Nevertheless, it is important to note that the legislature has included these automobile wrecking yards within the category enjoinable as nuisances. The legislature may proscribe certain things as nuisances and may change the common law of nuisance: Heinl et al. v. Pecher et al., 330 Pa. 232.

If the legislation is a true exercise of the police power, it may relate to existing property rights without offending the constitutional provisions against taking property without due process of law. For example, in Hadacheck v. Sebastian, 239 U. S. 394, 60 L. Ed. 348, a municipal ordinance forbidding brick-making within a designated area in Los Angeles was held to prohibit brick-making by one who was using his land for that purpose long before the ordinance was passed and before his land was taken into the city, and in Reinman v. Little Rock, 237 U. S. 171, 59 L. Ed. 900, an existing livery stable was closed by virtue of an ordinance forbidding livery stables in a particular part of the city.

A business not a nuisance per se may be declared to be a nuisance in a particular place, and the prohibition may apply to existing businesses: Levine et al. v. Board of Adjustment of the City of New Britain, 125 Conn. 478; Hammond v. Board of Aldermen of City of

Paterson, 123 N. J. L. 553; Town of Grundy Center v. Marion, 231 Ia. 425, 1 N. W. (2d) 677. The three cases last cited relate to junk yards. In Commonwealth v. Parks et al., 155 Mass. 531, 30 N. E. 174, Mr. Justice Holmes, then Chief Justice of Massachusetts, while sustaining a municipal ordinance prohibiting blasting, observed that such an ordinance might be unlawful in some localities. Our statute forbidding automobile junk yards is, however, to apply only in case the local authorities so decide, a type of proceeding favorably noted in Kistler v. Swarthmore Borough, 134 Pa. Superior Ct. 287.

Our own authorities indicate that not every attempt to employ the police power is valid as against existing rights (Manorville Borough v. Flenner, 286 Pa. 103; Bryan v. City of Chester, 212 Pa. 259), but such cases as Heinl et al. v. Pecher et al., 330 Pa. 232, indicate our substantial conformity to the general principles above cited. The right of the plaintiff township to bring suit arises from the Act of 1939. This has required a construction of the act. We find it to be a lawful exercise of the police power.

Defendant attempts to avoid the effect of the statute by contending that he has not permitted "accumulations of garbage or rubbish", nor engaged in "the storage of abandoned and junked automobiles on private or public property", nor "carried on any offensive manufacture or business". This contention must be rejected.

"The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the Legislature": Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 51, 46 PS §551.

Nothing is more clear than the intention of the legislature to prohibit or control what are popularly known as "automobile graveyards". Of course, the automobiles are, in a sense, not "abandoned" while he has them and not "junked" in the complete sense until he has cut them up and sold them as junk. This is but

play on language. They are junked cars and defendant has stored them on an open lot while he strips them of everything useful and prepares them for the smelter.

Nor do we find, as defendant contends, that plaintiff is barred by laches. No one has a vested right in a nuisance: Wier's Appeal, 74 Pa. 230; Boehm v. Philadelphia, 59 Pa. Superior Ct. 441. Defendant has not changed his position in any way, and laches will not be imputed to plaintiff where defendant has not been harmed in any way: Quinn v. American Spiral Spring & Manufacturing Co., 293 Pa. 152; Sooy v. Giacomucci, 31 Del. Co. 345.

Entertaining these views, we arrive at the following

### Conclusions of law

1. Plaintiff is a proper party to maintain the suit.

2. Plaintiff has shown acts on defendant's part amounting to a public and private nuisance.

3. The Act of May 1, 1939, P. L. 41, is a lawful exercise of the police power.

4. Plaintiff is not barred by laches.

5. Plaintiff is entitled to injunctive relief against defendant both at common law and under the statute.

6. Defendant may be allowed a reasonable time to transfer his business elsewhere.

### Decree nisi

Now, July 22, 1944, after hearing and considering the matter, it is ordered, adjudged, and decreed that defendant be and is hereby enjoined from conducting his business of dismantling and wrecking automobiles at his present location on Wilmington Road, Neshannock Township, or elsewhere in said township, and that he is hereby ordered and directed to remove all the automobiles wholly or partially dismantled or intended for dismantling, from his present location within 60 days from the date hereof. The costs are placed upon respondent.

This decree shall become absolute unless exceptions are filed hereto within 10 days after notice of the filing hereof.