PARKERSBURG BUILDERS MATERIAL COMPANY *et al.*
*v.* DAN BARRACK

(No. 8537)

Submitted April 21, 1937.    Decided May 11, 1937.

*Ambler, McCluer & Ambler,* for appellant.
*W. H. Wolfe,* for appellees.

MAXWELL, JUDGE:

This is an appeal from a decree of the circuit court of Wood County abating an alleged nuisance.

Owners of property in the vicinity of defendant's property brought the suit for the purpose of enjoining him from using his ground for outdoor storage and wreckage of abandoned automobiles. At the time of the taking of the testimony, it appeared that the defendant had parked about one hundred twenty-five old automobiles on the lot; that it is his purpose to place many more there as the requirements of his business may render necessary. Around the bounds of the lot which contains about four acres the defendant has erected a barbed wire fence of eighteen strands, seven or eight feet in height. The trial chancellor enjoined the defendant from using his property as a storage yard for old automobiles and from dismantling automobiles thereon except within an enclosed structure, and required the defendant to take down the fence.

The defendant's property is situated in the eastern section of the City of Parkersburg, about a thousand feet from the city's eastern boundary. The property fronts on the north side of Seventh Street of the city. This street is a portion of U. S. Route 50 extending entirely across the state from east to west, and is a much used highway. There are a few residences close by and several business establishments, such as three automobile service stations, a restaurant and dance hall, a creamery, and an automobile repair shop. One lot, on the southern side of the street and probably two hundred feet east, is occupied as a storage place for pipe used by a natural gas producing company.

It is in evidence that inclusive of several city blocks in the section of the city under consideration there are four hundred and seventy-five residences and seventeen places of business. These figures give to the residential properties a dominance of ninety-six per centum of all the properties involved. But it is to be noted that this result is attained by including numerous properties not of the immediate vicinity. The evidence does not disclose what would be the result of an· apportionment on a more restricted territorial basis. However, from the record, it appears that on a basis of area embracing two or three city blocks, inclusive of the block in which the plaintiffs' and defendant's properties are located, the properties occupied for residence would not greatly predominate in numbers over those used for business purposes. There are many vacant lots close to defendant's lot. Presumably, they are intended ultimately to be used for residential purposes, but it would not be proper to include them in a present-day survey of the community in determining its residential or business character. Upon this factual background, we are unable to ascribe to the community a predominatingly residential characterization.

There is time-honored jurisdiction in courts of equity to abate nuisances. These include conditions which are offensive and deleterious because of noise. *Snyder* v. *Cabell*, 29 W. Va. 48, 1 S. E. 241; *Ritz* v. *The Woman's*

*Club of Charleston,* 114 W. Va. 675, 173 S. E. 564, 182 S. E. 92. Also, equity takes cognizance of conditions which are offensive to the olfactory nerves and are therefore disagreeable and unwholesome. *Rhoades* v. *Cook,* 122 Iowa 336, 98 N. W. 122; *Rowland* v. *New York Stable Manure Co.,* 88 N. J. Eq. 168, 101 A. 521; *Bragg* v. *Ives,* 149 Va. 482, 140 S. E. 656. But courts of equity have hesitated to exercise authority in the abatement of nuisances where the subject matter is objected to by the complainants merely because it is offensive to the sight. A distinction between the latter class and the two preceding ones lies in the difficulty which arises in attempting to create a standard of measurement by which to gauge whether an alleged unsightly situation shall or shall not be classed as a nuisance. The subject is necessarily one of relativity.

This case does not involve a zoning ordinance, but the subject is kindred. Zoning ordinances have been fruitful of litigation. Some of the states have upheld enactments of that kind, while courts of other states have condemned them as unconstitutional. In the case of the *Village of Euclid* v. *Ambler Realty Co.,* 272 U. S. 365, 47 S. Ct. 114, 118, 71 L. Ed. 303, 54 A. L. R. 1016, a case arising from the State of Ohio, the Supreme Court of the United States declared the therein embraced zoning ordinance constitutional. In the opinion the court said: "Building zone laws are of modern origin. They began in this country about twenty-five years ago. Until recent years, urban life was comparatively simple; but with the great increase and concentration of population, problems have developed, and constantly are developing, which require, and will continue to require, additional restrictions in respect of the use and occupation of private lands in urban communities. * * * Such regulations are sustained, under the complex conditions of our day, for reasons analogous to those which justify traffic regulations, which, before the advent of automobiles and rapid transit street railways, would have been condemned as fatally arbitrary and unreasonable. And in this there is no inconsistency, for while the meaning of constitutional guaranties never

varies, the scope of their application must expand or contract to meet the new and different conditions which are constantly coming within the field of their operation. In a changing world, it is impossible that it should be otherwise. * * *

"The ordinance now under review, and all similar laws and regulations, must find their justification in some aspect of the police power, asserted for the public welfare. * * * Thus the question whether the power exists to forbid the erection of a building of a particular kind or for a particular use, like the question whether a particular thing is a nuisance, is to be determined, not by an abstract consideration of the building or of the thing considered apart, but by considering it in connection with the circumstances and the locality. *Sturgis* v. *Bridgeman*, L. R. 11 Ch. 852, 865. A nuisance may be merely a right thing in the wrong place,—like a pig in the parlor instead of the barnyard. If the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control. *Radice* v. *New York*, 264 U. S. 292, 294."

Truly, in our complex American society where congestion is yearly becoming more pronounced, the changing conditions of this progressive nation require an expanding application of basic principles. The modern tendency to yield to such expansion is clearly illustrated in recent holdings of our highest court giving enlarged meaning to certain provisions of our organic law deemed to be necessary to meet changing conditions in our national life. Therefore, we need not shirk our responsibility in matters of this character when necessity for action is made clear on impelling grounds of public good, even though the result be attained through liberalization of hitherto accepted restrictions respecting the safety, peace, morals and general welfare of the people. Evincing this fundamental truth is the circumstance that in some states where zoning ordinances were at first declared unconstitutional, later decisions have upheld them. See reference in *Euclid* case, *supra*, at p. 391, of 272 U. S.

But evolutional conceptions respecting the right and

duty of society to protect itself from undesirable and disagreeable conditions are not of necessity confined to municipal zoning ordinances. There is a growing belief that that which is offensive to the view, an eye-sore, a landscape-blight, may attain such significance as to warrant equitable interposition. In *Yeager* v. *Traylor*, 306 Pa. 530, 160 A. 108, neighboring property owners sought to enjoin the erection of a public storage garage which was to have open sides and parking space on the roof. The court permitted the building to be erected but required that it be entirely enclosed, and stated further, "If it is proposed to supply parking space upon the roof an effective screen must be provided by means of a suitable balustrade or other device to hide the unsightly appearance which would be the result of such practice." Discussing the subject of aesthetics, in *State ex rel. Carter* v. *Harper*, 182 Wis. 148, 196 N. W. 451, at 455, 33 A. L. R. 269, the Supreme Court of Wisconsin said: "It seems to us that aesthetic considerations are relative in their nature. With the passing of time, social standards conform to new ideals. As a race, our sensibilities are becoming more refined, and that which formerly did not offend cannot now be endured. That which the common law did not condemn as a nuisance is now frequently outlawed as such by the written law. This is not because the subject outlawed is of a different nature, but because our sensibilities have become more refined and our ideals more exacting. Nauseous smells have always come under the ban of the law, but ugly sights and discordant surroundings may be just as distressing to keener sensibilities. The rights of property should not be sacrificed to the pleasure of an ultra-aesthetic taste. But whether they should be permitted to plague the average or dominant human sensibilities well may be pondered."

Happily, the day has arrived when persons may entertain appreciation of the aesthetic and be heard in equity in vindication of their love of the beautiful, without becoming objects of opprobrium. Basically, this is because a thing visually offensive may seriously affect the residents of a community in the reasonable enjoyment of

their homes, and may produce a decided reduction in property values. Courts must not be indifferent to the truth that within essential limitations aesthetics has a proper place in the community affairs of modern society.

Of course, equity should not be aroused to action merely on the basis of the fastidiousness of taste of complainants. Equity should act only where there is presented a situation which is offensive to the view of average persons of the community. And, even where there is a situation which the average person would deem offensive to the sight, such fact alone will not justify interference by a court of equity. The surroundings must be considered. Unsightly things are not to be banned solely on that account. Many of them are necessary in carrying on the proper activities of organized society. But such things should be properly placed, and not so located as to be unduly offensive to neighbors or to the public. For example, an automobile service station and tire repair shop may be a nuisance by reason of its location. *Bloch v. McCown,* 219 Ala. 656, 123 So. 213.

An automobile junk yard is not necessarily an objectionable place. The business of buying old automobiles, wrecking them and selling serviceable parts as such and junking the residue is an honorable and useful business. But an outdoor lay-out of a business of that kind necessarily is not pleasing to the view. Such business, therefore, should not be located in a community of unquestioned residential character.

Where, however, a section of a municipality is not a clearly established residential community a court of equity will not be warranted in excluding therefrom as a nuisance an automobile-wrecking business merely on the ground of unsightliness. Such, in our opinion, is the situation at bar. Therefore, we reverse the decree of the circuit court, dissolve the injunction and dismiss the bill without prejudice to the plaintiffs' rights as they may hereafter appear.

*Reversed and rendered.*

KENNA, PRESIDENT, concurring:

I agree with the conclusion reached by the majority of the court that the plaintiff in this case has failed to show that the property as to which it seeks injunctive relief is situated in an exclusively residential section of the City of Parkersburg. Inasmuch as the granting of injunctive relief to prohibit or abate a nuisance is, excepting where the nuisance involved is said to be a nuisance *per se,* dependent upon the neighborhood and surrounding conditions, and inasmuch as the plaintiff in this case has not succeeded in bringing itself within the class of property owners who may maintain this sort of a suit, I am of the belief that that question alone is determinative of this controversy. The plaintiff, not being a property owner in an exclusively residential section, simply cannot maintain this suit. When that fact becomes apparent, the suit must be dismissed regardless of other considerations. I, therefore, think that the discussion contained in the majority opinion with respect to the power of a court of equity to enjoin the continuance of a structure or condition on the ground of unsightliness alone is entirely unnecessary to a decision of the case. With all respect for the opinions of my associates, I think that that discussion, in addition to being unnecessary, proceeds upon lines that are entirely unsound.

To my mind, the major fallacy of the majority opinion lies in the fact that to sustain its position that unsightliness alone may constitute a nuisance, it depends primarily upon those cases which sustain building regulations, zoning ordinances, and the like, as being proper exercises of the police power of the state. There is no dispute about this being the trend of modern decisions, although in this state we are definitely committed to the holding that an ordinance seeking to establish a property line for no other than aesthetic reasons is invalid. *Fruth* v. *Board of Affairs,* 75 W. Va. 456, 84 S. E. 105, L. R. A. 1915D, 1186. Although I do not know of any case that has sustained such an exercise of the police power on the ground that aesthetic considerations by themselves justify the exercise of that power, the unmistakable trend is

to sustain the exercise of that power in zoning and the like as being promotive of the public health and safety and in furtherance of the general welfare of the community. *Metzenbaum on the Law of Zoning*, p. 99, Par. D. There is to my mind a clear and most decided difference between direct control by the courts through the process of injunction on the one hand, and the control exercised by the legislative branch through the use of the police power on the other.

With respect to the police power, the Supreme Court of the United States has said: "While the police power of the state cannot be so arbitrarily exercised as to deprive persons of their property without due process of law or deny them equal protection of the law, it is one of the most essential powers of the government and one of the least limitable; in fact, the imperative necessity for its existence precludes any limitation upon it, when not arbitrarily exercised." *Hadacheck* v. *Sebastian*, 239 U. S. 394. The proper exercise of the police power has been held to override both the due process clause and the equal protection clause of the Constitution, so great is the extent of that power. It must never be forgotten by the courts, however, that this great power is lodged in the legislative branch of the government, composed of representatives directly elected by the people for the purpose of making laws. Its exercise is not intended for the courts whose business is to apply existing legal principles.

The majority opinion argues that to extend the law of nuisances so that courts of equity by injunctive intervention may prevent the continuance of things that are unsightly or offensive to the aesthetic sensibilities is in keeping with the liberal spirit of modern judicial decisions exemplified by the very recent attitude of the United States Supreme Court. Without pausing to inquire as to the stability of conviction which may or may not underlie that great court's recent trend, I think that the majority opinion in this case argues along lines that are the antithesis of liberalism. There can be no doubt that it is a vast extension of the former powers of the courts to say that a court of equity may enjoin as a nuisance the

continuation of a thing because it is unsightly. So far as I have been able by an exhaustive search to discover, no judicial decision in either England or America has ever so held. The case of *Village of Euclid* v. *Ambler Realty Co.*, 272 U. S. 365, quoted at length in the majority opinion, involves simply the constitutionality of a zoning ordinance. It was, I believe, a case of first impression in the Supreme Court, and is the country's leading authority sustaining comprehensive zoning regulations as proper exercises of the police power. The case has nothing to do with the direct powers of equity courts to abate nuisances. The same thing is true of the case of *State ex rel. Carter* v. *Harper*, 182 Wis. 148, 196 N. W. 451, 33 A. L. R. 269, also relied upon in the majority opinion. *Yeager* v. *Traylor*, 306 Pa. 530, 160 A. 108, is quoted in the majority opinion, but a careful examination of the opinion in that case discloses that the question of unsightliness received merely incidental treatment. There an injunction was sought to prohibit the erection of a commercial garage in a residential area. The relief was asked upon the grounds usually assigned in such matters—that the proximity of a commercial garage with its vapors and odors, its noises and vibrations would damage the surrounding residential properties because of the fact that they would thereby be rendered unfit for the homes of persons of ordinary sensibility. A regulatory decree was entered permitting the construction of the building. In the course of discussing the regulatory decree, after having dealt with the more serious questions of complaint, the opinion alludes to the question of unsightliness in the language quoted in the principal opinion herein. There is nothing in the court's discussion to indicate that the matter was either briefed or argued and there is no citation of authority which justifies even the incidental treatment it received. My own investigation confirms what I believe is apparent from a perusal of the cases used in the principal opinion, that is, that the direct intervention of courts of equity on the ground of unsightliness alone is a theory that rests upon little or no authority. On the other hand, the courts of this country by

direct pronouncements, as well as by cases of inescapable analogy, have universally declined to so extend the power of the courts.

The following cases have held directly that mere unsightliness is not a subject for direct injunctive relief: *Trulock* v. *Merte,* 72 Iowa, 510, 34 N. W. 307 (1887); *Woodstock Burial Ground Association* v. *Hager* (1896), 68 Vt. 488, 35 A. 431; *Flood* v. *Consumers Company* (1903), 105 Ill. App. 559; *Whitmore* v. *Brown* (1906), 102 Me. 47, 65 A. 516; *Crossman* v. *City of Galveston,* (1923) 112 Tex. 303, 247 S. W. 810; *Houston Gas & Fuel Co.* v. *Harlow,* (1927) (Tex. Civ. App.) 297 S. W. 570. In not one of these cases is there mentioned an authority or decision to the contrary. See also the note to *Acme Fertilizer Co.* v. *State,* (34 Ind. App. 346, 72 N. E. 1037) 107 Am. St. Rep. 190, at page 232. See also 28 Mich. Law Review, page 211, reviewing the case of *Shepler* v. *Kansas Milling Co.,* 128 Kan. 554, 278 P. 757, in which it was shown that immediately across the street and a railroad track from the plaintiff's property, the defendant had erected grain storage tanks sixty feet high which were painted white and reflected the afternoon sun in such manner as to create great annoyance and discomfort to those occupying the plaintiff's premises. An injunction was refused.

It would seem that nothing could be more highly objectionable as far as the impression to be made upon one's vision is concerned than the total shutting off of all view. That amounts to unsightliness in a very literal sense. Yet, the uniform holdings in this country are to the effect that obstructions of view, and even of light and air, will not be enjoined on that account alone. *Dallas Land & Loan Co.* v. *Garrett,* (Tex. Civ. App.) 276 S. W. 471; *Hay* v. *Weber,* 79 Wis. 587, 48 N. W. 859, 24 Am. St. Rep. 737; *Harwood* v. *Tompkins,* 24 N. J. L. 425; *Honsel* v. *Conant,* 12 Ill. App. 259; *Levy* v. *Samuel,* 4 Misc. Rep. 48, 23 N. Y. S. 825.

It seems palpable that in a state where the courts have held the legislative exercise of the police power is unconstitutional if based solely upon aesthetic considera-

tions, the courts should not extend their own power beyond that of the legislature by holding that they have the right to enjoin as a nuisance that which is merely unsightly. Certainly in a mining and industrial state, such as West Virginia, with its building possibilities restricted by a rugged terrain, it is a doctrine that is open to very serious question. The rules that govern the law of nuisances are uncertain enough without engrafting upon them a doctrine as essentially speculative as this dictum. With that doctrine as a part of our equity jurisprudence, our courts are likely to be called upon in large degree to embark into the business of city planning, with little to guide them excepting the infinite variations of taste and preference.

Neither do I believe that the doctrine enunciated in the majority opinion is a step in the direction of liberalism. It is a great enlargement of the powers of the courts over the properties and customs of the people, and it constitutes an encroachment by the courts into a field that should be occupied by the direct legislative representatives of the people. The recent trend toward liberalism in our highest tribunal has been markedly in the direction of sustaining the power of the legislative branch. I do not believe that for this court to assume a power that it has forbidden to the legislature is by any means in accord with that trend.

I trust that I have said nothing that may be regarded as unduly emphatic, but I strongly feel that the arguments which I have attempted in a measure to meet are based upon dangerously unsound principles. I believe that the fact that the plaintiff is not entitled to sustain this suit because its property does not lie in an exclusively residential district is sufficient reason for the court's holding. I freely concede that the modern trend is toward sustaining zoning and regulatory ordinances, not, perhaps, where they are based upon aesthetic considerations, but by reason of a greatly liberalized concept of the safety, health and general welfare of the community, the necessities of which sustain the exercise of the police power. I feel very sure that the court should not

undertake to do by injunction what may be questionable when done by the legislature in the exercise of its police power. I am quite certain that there is no trend of judicial decision in this country toward sustaining the powers of a court of equity to enjoin the continuance of a condition that is merely unsightly or offensive to aesthetic sensibilities. Because these conclusions are totally at variance with the discussion contained in the majority opinion, I feel that it is necessary for me here to express them.