283 P.2d 217

Glen A. HATCH and Edith E. Hatch,
Plaintiffs and Appellants,

**v.**

W. S. HATCH COMPANY, a corporation,
and Willard S. Hatch, Defendants
and Respondents.

No. 8215.

Supreme Court of Utah.

May 5, 1955.

296

Oscar W. Moyle, Jr., Moyle & Moyle, Salt Lake City, for appellants.

Marr, Wilkins & Cannon, Mark K. Boyle, Salt Lake City, for respondents.

McDONOUGH, Chief Justice.

Plaintiffs appeal from a dismissal of their cause after a trial on the merits by the court sitting without a jury, contending that the trial court erred in finding that no actionable nuisance is maintained by the defendants on property adjoining plaintiffs' residential property.

Plaintiff Glen A. Hatch and defendant W. S. Hatch are brothers, who inherited contiguous pieces of property, with a house on each lot, situated in Woods Cross, Davis County, Utah. Plaintiffs moved into their home in 1917, but did not obtain title until 1935, doing substantial remodelling in 1935 and again in 1951; they occupy the property primarily as a residence, doing some farming thereon and maintaining a filling pump and storage garage in the rear of their house for trucks belonging to Hatch Brothers Company, a livestock corporation in which both brothers hold stock. Defendant moved into his residence, immediately north of plaintiff's property, about 1935 and utilized the area behind the house to establish a business of transporting road tars and oils. The company, here also made defendant, had its inception in about 1937 when W. S. Hatch purchased an insulated distributor. Since that time it has expanded to an operation maintaining it own garage for servicing its equipment consisting of 46 machines and employing as many as 45 men at the peak of the road-building season, which is, of course, the months of good weather in this area. Plaintiffs complain chiefly of the noises, fumes from trucks, and lights at night from the garage located about 280 feet to the rear of their home. Included also in their complaint was an allegation that the defendants allowed tires and other debris to accumulate along the fence between the two properties, but this condition was remedied a few days prior to the trial of the case.

On appeal, plaintiffs decry the trial court's finding "that within a radius of 500 feet of the Woods Cross intersection is one of the most highly industrialized areas in the State of Utah," contending that the land there is equally devoted to agriculture and residences. The main line of the Union Pacific Railroad passes 195 feet west of plaintiffs' house and during a normal 24-hour period, 42 trains travel the section in front of their home, with the attendant noises and flashing lights necessary for

warning signals at the crossing. Onion Street, upon which plaintiffs' property fronts, carries a heavy traffic of automobiles and trucks. Also within the immediate area, the Phillips Petroleum Company operates and maintains a large bulk plant, a refinery, and a catalyst cracker; that company also owns and operates two racks for loading tank trucks with oils. Two other trucking garages for the repair and service of tank trucks, semi-trailers and trailers of other carriers of petroleum products are located nearby. However, although these industries have developed, since the location of the W. S. Hatch Company, all along one side of Onion Street right up to plaintiffs' home, their house marks the last outpost of lots used solely for residences and beyond it there are no other industries. The area is more accurately shown by the aerial photograph introduced as defendants' exhibit: (North is to the left; arrow indicates contiguous properties of plaintiffs and defendants.)

However, the categorization of the neighborhood as industrial would not justify the creation of a nuisance therein, Ludlow v. Colorado Animal By-Products Co., 104 Utah 221, 137 P.2d 347, and where, as here, we have uncontroverted evidence as to the nature of the use of the various properties surrounding plaintiffs' land, there is no need to determine its predominant attributes. The fact that other noisy industrial operations are taking place in that area bears only upon whether or not defendants' activities are reasonable in that particular locality and hence, whether or not a nuisance exists. As is stated in 39 Am.Jur., Nuisances, sec. 47, page 331:

"There can be no fixed standard as to what noise constitutes a nuisance, and the circumstances of the case must necessarily influence the decision. To amount to a nuisance, the noise must be unreasonable in degree, and reasonableness in this respect is a question of fact. No one is entitled to absolute quiet in the enjoyment of his property; he may only insist upon a degree of quietness consistent with the standard of comfort prevailing in the locality in which he dwells. The location and surroundings must be considered, since noise which amounts to a nuisance in one locality may be entirely proper in another. The character and magnitude of the industry or business complained of and the manner in which it is conducted must also be taken into consideration, and so must the character and volume of the noise, the time and the duration

of its occurence, the number of people affected by it, and all the facts and circumstances of the case."

■ The test of whether the use of the property constitutes a nuisance is the reasonableness of the use complained of in the particular locality and in the manner and under the circumstances of the case. Cannon v. Neuberger, 1 Utah 2d 396, 268 P.2d 425; Dahl v. Utah Oil Refining Co., 71 Utah 1, 262 P. 269. And the question is not whether a reasonable person in the plaintiff's or defendant's position would regard the invasion as unreasonable, but whether reasonable persons generally, looking at the whole situation impartially and objectively, would consider it unreasonable. Restatement of Torts, Sec. 826(b). The difficulty of obtaining such a point of view is clearly pointed up by the evidence in the present case. Plaintiffs testify that the switching of trains immediately in front of their home, the traffic noises of the highway, the sounds and light from the refinery, and noises similar to those created by defendant from garages located 200 to 400 feet farther away from their residence are not such as to cause considerable annoyance to them as do defendants' activities. Defendant, W. S. Hatch, on the other hand, scarcely notices the noise necessarily connected with the repair and operation of large trucks used in his business, although this business is practically in his back yard. A witness for the plaintiffs, having been a guest in their house, testified that their yard was brightly lighted because of lights from defendants' garage, and to the extremity of the noises emanating therefrom. The nearest neighbor of plaintiffs testified on behalf of defendants to the effect that his yard, too, was uncomfortably light at night, but that the situation was caused by the burning vapor from the waste gas pipe at the refinery. Also, a mechanic employed by the W. S. Hatch Company testified that Glen Hatch had called one night about midnight to complain of noise in the shop; at that time, he stated, he was the only person on the premises and was not doing any work causing a noise.

■ Under this state of the record, we must rely considerably upon the findings of the trial court, despite the rule that in an equity case, this court will review the evidence and determine its weight. Not only did the lower court have the opportunity of observing the witnesses as they testified, but he also visited the premises, observed the conditions in the surrounding area and the garage, and had demonstrated to him the various specific noises of which the plaintiffs complain. See Kinsman v. Utah Gas & Coke Co., 53 Utah 10, 177 P. 418. The trial court, in its memorandum decision stated that in its opinion, even if an injunction were issued, "it would not diminish to any appreciable degree the noises, confusion and smells which emanate and exist in this immediate vicinity."

Cases which have considered whether or not public garages or the business of wrecking automobiles and salvaging the parts, analagous to this case because of the similarity of possible annoyances, have uniformly held that such businesses were not nuisances per se. See cases collected at George v. Goodovich, 288 Pa. 48, 135 A.

719, 50 A.L.R. 107 and Parkersburg Builders Material Co. v. Barrack, 118 W.Va. 608, 191 S.E. 368, 110 A.L.R. 1461. Whether or not such a business has been held to be a nuisance per accidens is apparently chiefly controlled by the character of the community in which the business is carried on. Eller v. Koehler, 68 Ohio St. 51, 67 N.E. 89; Parkersburg Builders Material Co. v. Barrack, 118 W.Va. 508, 191 S.E. 368, 192 S.E. 291, 110 A.L.R. 1454; Nevins v. McGavock, 214 Ala. 93, 106 So. 597; Hunter v. Wood, 277 Pa. 150, 120 A. 781; Wasilewski v. Biedrzycki, 180 Wis. 633, 192 N.W. 989. Plaintiffs rely heavily upon the case of Quinn v. American Spiral Spring & Mfg. Co., 293 Pa. 152, 141 A. 855, 61 A.L.R. 918, for the proposition that even though plaintiffs' house were located in a manufacturing area, an injunction might be issued ordering defendants to relocate an operation which had become a nuisance. The nuisance complained of in that case, however, is shown to be a much more serious interference with the plaintiff's property rights: due to the vibration from defendant's heavy machinery, pictures and other articles were shaken from tables, plaster fell from the walls and ceilings, the weakening of the house was progressive, and the plaintiff could not long remain in the house while the plant was in operation. Certainly, the facts of this case are clearly distinguishable from the present one, even if much of plaintiffs' evidence were undisputed. Further, it is to be noted that the court merely required defendant in the Quinn Case to remove the plant from the immediate proximity of plaintiff's house to the other side of its lot and did not enjoin the operation in that vicinity.

There can be no question but that the operation of W. S. Hatch Company causes some additional annoyance to plaintiffs, but whether or not an actionable nuisance exists must depend upon weighing the gravity of harm to the plaintiffs against the utility and reasonableness of defendants' conduct. (See Restatement of Torts, Chapter 40.)

The business of transporting oil is a natural development in a community where petroleum products are refined. It is necessary for defendants to operate at all hours of the night and on Sundays during the warm weather in order to furnish road-building crews throughout this area with materials which must be delivered at a hot temperature and cannot be stock-piled. Further, the evidence shows that defendants have cleaned up the debris pile complained of, that their operation is modern and they have adopted new appliances to cut down noises, that they do not use floodlights on the outside of the garage and have instead only that amount of light as is necessary for safety and efficiency, and that instructions have been issued to mechanics of the company to keep the doors of the garage closed whenever practicable.

We agree with the trial court that no actionable nuisance exists here. Affirmed. Costs to respondents.

CROCKETT, WADE and WORTHEN, JJ., and LEWIS, District Judge, concurred.

HENRIOD, J., having disqualified himself did not participate herein.