## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

William C. Dozier et al.

v.

Milo B. Delano
and Ryland W. Smoot

February 9, 1960

BY JUDGE JOHN D. BUTZNER, JR.

The plaintiffs filed their bill seeking to enjoin and restrain the defendants from maintaining and operating an automobile graveyard and junk yard on premises owned by the defendants, which were near the plaintiffs' premises. The plaintiffs alleged that the automobile graveyard and junk yard constituted a nuisance.

The defendants filed their answer, generally denying the material allegations of the bill, and also filed a petition praying for a junk dealers' license in order that they could continue operation.

The facts of the case may be briefly stated. The plaintiffs owned their homes and other property in a subdivision known as Spotswood Village, which is located in Spotsylvania County, Virginia, on the east side of U.S. Route No. 1, a short distance south of the City of Fredericksburg.

In September 1957, the defendants were granted a license by the Circuit Court of Spotsylvania County, pursuant to § 54-826 of the Code of Virginia 1950 to carry on business as junk dealers. The order specified that the business was to be located at Rose Avenue, Spotsylvania County. This location is on the west side of U. S. Route 1 and some little distance from the highway itself.

In June 1958, the defendants acquired a tract of land on the east side of U.S. Route 1 near the property of the plaintiffs. The defendants asked the Commissioner of Revenue of Spotsylvania County whether they would need a new license to operate their business on the premises on the east side of Route 1. The Commissioner of Revenue advised them that they would not

need a new license but that they could transfer their old license to their new location. This, of course, was contrary to the provisions of § 54-827 of the Code of Virginia, 1950. Thereafter, the defendants established, maintained, and operated an automobile graveyard and junk business on the premises on the east side of U. S. Route 1. The exact time that they started the operation of the automobile graveyard is a matter of some dispute.

The community along U. S. Route 1 in the vicinity of the defendants' automobile graveyard and junk yard is residential. The closest business to the north of the defendants' premises is a restaurant several hundred yards, possibly 1200 to 1800 feet distant. To the south, one-half or three-quarters of a mile, is a combination store and gas station. The homes in the immediate vicinity of the automobile graveyard and junk business are of modest construction and size. For the most part, they are well maintained and nicely landscaped.

On the issue of whether a nuisance existed, the evidence was in conflict. For the plaintiffs, William C. Dozier testified that he lived about 150 feet from the defendants' premises. He complained about the eye sore, smoke, odors, and noise at night.

Innis H. Hart, another plaintiff, testified that the junk yard and automobile graveyard was unsightly and that he heard noise late at night, the banging of metal on metal. He also stated that he had seen smoke and smelled the odor of tires burning.

Robert W. Pitts, a resident of Spotswood Village, testified that the junk yard and automobile graveyard was unsightly, particularly after the leaves fall off the trees. He also testified about the odor of burning cars and tires, a very unpleasant odor, and that he had seen smoke from there. He further testified that the defendants or their employees worked at night frequently, and the light shines into his house.

Edsel H. Brooks, who rents in Spotswood Village, his home being approximately 300 feet from the junk yard and graveyard, complained about the noise, which he stated was very disturbing.

Franklin Haas, who purchased his home in Spotswood Village after the business was established, stated that it was an eye sore.

Vera Colley and Albert G. Colley, who live on Number 1 Highway diagonally across from the defendants' place of business, complained primarily about the light at night.

Flora M. Hart, one of the plaintiffs, testified that she saw smoke and smelled rubber burning.

The plaintiffs also introduced evidence that the defendants' junk yard and automobile graveyard lowered the property values of the plaintiffs' properties.

The evidence of the defendants was in sharp conflict with that of the plaintiffs. M. W. Hall, Jr., testified that he lived in Spotswood Village 500 yards from the defendants' premises. He noticed nothing obnoxious with reference to the use and enjoyment of his home from the defendants' business.

Phil and Joe Samuels, who live close to the automobile graveyard and junk yard, testified that the business did not disturb them. The Samuels were closely related to the people who sold the property to the defendants.

John L. Bullock, a former employee, testified that in the operation of the business, there was no odor, only one car had been burned, and no noise.

Henry C. Gore, who lived approximately 150 feet north of the defendants' premises, stated that he had not been disturbed by noise or odors.

Melvin Hairfield, who lived across the highway from the defendants' premises, testified that he had not been disturbed by burning, noise, or night work and he had seen no evidence of such.

John Harris, who transacted business with the defendants on the premises and for that reason was frequently there at night, testified that he had not seen any night work.

Walter D. Floyd and Mildred Floyd, who rent property 150 to 200 yards from the junk yard and automobile graveyard, had no complaint.

Milo B. Delano, one of the defendants, testified that only one car had been burned on the premises. He stated that there were approximately 200 cars in the automobile graveyard. He and Ryland W. Smoot, the other defendant, both denied night work, burning, and excessive noise.

Walter M. Wood, a firefighter at the Naval Weapons Laboratory, Dahlgren, Virginia, testified that he inspected the automobile graveyard on or about October 26, 1959, saw only 60 cars, and noticed that only one of them was burned.

The Court, in the company of counsel, inspected both the plaintiffs' subdivision and the defendants' premises. The homes in the community are of modest construction and with one or two exceptions are neatly maintained and landscaped. The establishment and operation of the defendants' business in this residential community obviously created an eye sore. The inspection disclosed no burned shells or cars; however, it was apparent that an open trash pile on the premises was used for burning.

From the evidence and from its inspection, the Court is of the opinion that the defendants' automobile graveyard and junk business are obnoxious to the plaintiffs, impair the usefulness and enjoyment of the plaintiffs' dwellings,

lessen the property values of the plaintiffs' property, and have caused the plaintiffs irreparable harm.

Businesses lawful in themselves have frequently been recognized as nuisances by the Supreme Court of Appeals of Virginia. *E. W. Face & Son v. Cherry*, 117 Va. 41, 84 S.E.10 (1915), concerned the operation of a brickyard. In that case, the Supreme Court of Appeals quoted, with approval, *High on Injunctions*, as follows:

> The most frequent instance of nuisances of a strictly private nature occurs in the erection of structures obnoxious or hurtful to the buildings used for residence and business purposes. The law may be regarded as settled that when a business, although lawful in itself, becomes obnoxious to neighboring dwellings and renders their enjoyment uncomfortable, whether by smoke, cinders, noise, offensive odors, noxious gases, or otherwise, the carrying on of such business is a nuisance which equity will restrain … . And the fact that the nuisance is not perpetual but will only recur occasionally, and then but for a short period, will not avail the defendant if it be an unmistakable nuisance.

1 *High on Injunctions* (4th ed.) § 772.

While the question of whether an automobile graveyard and junk yard is a nuisance has not been decided by the Supreme Court of Appeals of Virginia, the issue has been considered by other courts. In *Weishahn v. Kemper*, 32 Ohio App. 313, 167 N.E. 468 (1928), the Court abated as a nuisance a junk yard in a residential district.

In *Parkersburg Builders Material Co. v. Barrack*, 118 W. Va. 608, 191 S.E. 368 (1937), the Court discussed the operation of an automobile wrecking business as a nuisance. In that case, however, it appeared that the area or community in which the business was being operated was not strictly residential, and for this reason, the Court held that the business should not be abated as a nuisance. See also *Martin v. Williams*, 141 W. Va. 595, 93 S.E.2d 835 (1956), in which a used car lot was abated as a nuisance.

The Court is of the opinion that the operation of the defendants' automobile graveyard and junk business, while lawful *per se*, is nevertheless a nuisance in its present location in a residential community. Moreover, the Court is of the opinion that it would be impractical to permit the defendants to operate under regulation of the Court as they requested. The defendants have

not fenced the property, and the terrain of the premises makes adequate fencing impossible in some places.

The defendants in their petition asked the Court to grant them a junk dealer's license in order that they could continue operating on the premises. This request brings up another phase of the case. In 1958 the General Assembly enacted § 33-279.3 of the Code of Virginia as amended. Subsection (b) prohibits the establishment of an automobile graveyard within 500 feet of any state highway. Subsection (c) prohibits the establishment of an automobile graveyard within 1000 feet of any primary state highway except on land which has been specifically designated or zoned for such use by the governing body of the County. The General Assembly adjourned March 28, 1958, and, of course, the act became effective ninety days thereafter.

There is a conflict in the evidence as to whether the defendants established their automobile graveyard in June prior to the effective date of the act or thereafter. Evidence for the plaintiffs indicates that it was started in September 1958. The defendant, Mr. Smoot, stated it was started in June 1958. The defendant, Milo B. Delano, twice on direct examination stated that they started business approximately nine months before the papers were served on them in this case. The papers were served May 19, 1959. That would indicate the establishment of the automobile graveyard, according to Mr. Delano, in September which accords with the plaintiffs' testimony.

It is the opinion of the Court that the automobile graveyard was established after the effective date of the act. It is undisputed that it is within 500 feet of a state highway which constitutes the main thoroughfare of Spotswood Village. It is also located within 1000 feet of U. S. Route 1, a primary highway, on land that has not been designated for such business by the County. No statute specifies the location of junk business, but the Court is of the opinion that the defendants should not be granted a license as junk dealers to operate in conjunction with an automobile graveyard that was illegally established. For the foregoing reasons, in addition to the finding that a nuisance exists, the Court is of the opinion that the license should not be granted.

In the oral argument, the defendants contended that they should be permitted to continue business under § 54-831 of the Code of Virginia, 1950, because they had a merchants' license. The parties entered into a stipulation that the defendants have a merchant's license and that Alex Klotz holds a junk dealer's license and is engaged in junk business within three miles of the defendants' place of business. Klotz's business is in the City of Fredericksburg, Virginia. The Court is of the opinion that the defendants'

contention in this regard is without merit, for three reasons. First, their reliance on § 54-831 was not pleaded. Second, they do not come within the protection of § 54-831 because another junk dealer is within three miles of their place of business. The fact that the junk dealer is in the City of Fredericksburg is immaterial. Third, and finally, even if they were within the provisions of this section, they are not give immunity to locate and operate their business so as to constitute a nuisance in a residential community.

At the conclusion of the oral argument, the defendants asked for six months to abate the nuisance. The Court realizes that they should have ample time to dispose in an orderly way of the material that they have placed on the premises. Accordingly, the defendants will be allowed six months to remove the junked automobiles from the premises.