391 S.E.2d 382

David J. KAHLBAUGH

v.

A–1 AUTO PARTS, a Partnership, W.L. Merinar and Carl E. Koontz, Owners.

No. 18856.

Supreme Court of Appeals of West Virginia.

March 23, 1990.

Rodney T. Berry, Diana H. Crutchfield, Berry & Kessler, Moundsville, for David J. Kahlbaugh.

Randolf E. Richardson, Ronald W. Kasserman, Seibert, Kasserman, Farnsworth, Gillenwater, Glauser & Richardson, Wheeling, for A–1 Auto Parts, W.L. Merinar and Carl E. Koontz.

PER CURIAM:

In this appeal, David J. Kahlbaugh and the other appellants claim that the Circuit Court of Marshall County erred in refusing to enjoin the operation of an automobile salvage yard in their neighborhood. They claim that their neighborhood is a residential area, that, under the circumstances, the salvage yard constitutes a nuisance, and that the circuit court should have enjoined its operation. After reviewing the record and the questions presented, this Court disagrees and affirms the judgment of the Circuit Court of Marshall County.

The appellants are residents and property owners in an area called Sherrard, Marshall County, West Virginia. In 1973, Winnie L. Merinar, one of the appellees, purchased a farm containing approximately thirty-nine acres in the Sherrard area. In 1976 or 1977, she leased the farm to an operation now known as A–1 Auto Parts. A portion of the farm was later developed as a salvage or junk yard for wrecked and disabled vehicles.

In March, 1981, the appellants filed a complaint in the Circuit Court of Marshall County to enjoin A–1 and the other appellees from maintaining the salvage yard. They alleged that the yard was in a residential area and that the noise, unsightliness, and hazards resulting from it affected their property values and constituted a nuisance. They also claimed that the operation of the salvage yard resulted in an unreasonable burden on a right-of-way intended for incidental residential traffic in the area.

After the filing of the pleadings, extensive proceedings were conducted, which culminated in a bench trial before the judge of the Circuit Court of Marshall County on June 4, 1984.

At the conclusion of the trial, the court denied the injunctive relief which the appellants sought. The court found that the operation of the salvage yard caused increased traffic over a roadway approximately 1300 feet in length from a main highway to the entrance of the operation and noted that residential properties owned by the appellants were located on each side of the roadway. The closest residence to the salvage road was 800 feet away, and the most distant was approximately 1300 feet away. The court also noted that the salvage yard was commenced when the area was a rural area and that at the time of the ruling it was surrounded by approximately 95% farm and wood land. The court indicated that the area was gradually being developed into a semi-residential area but that it was not an established or exclusive residential area and that the immediate area was essentially rural and country in character and only partially inhabited for residential purposes. The court noted that

two appellants resided in the area prior to the commencement of the salvage yard. The residences of two of the other appellants were constructed after the wrecking operation had begun.

The court concluded that the operation of the salvage yard did not constitute an actionable nuisance and refused to issue an injunction prohibiting the operation of the yard. The court did, however, enjoin the salvage yard from transporting an automobile crusher over the roadway to and from the salvage yard more than once annually and required the salvage yard operator to give the appellants fifteen days' notice in advance of the arrival and the departure of the crusher and required the salvage yard to maintain the roadway at all times. It is from the circuit court's findings and ruling that the appellants now appeal.

As a general rule, a nuisance is said to exist when a lawful business in a strictly residential district materially lessens the physical comfort of persons in their homes and materially interferes with enjoyment of property and thereby impairs the enjoyment of homes in the neighborhood and infringes upon the well being, comfort, repose, and enjoyment of the ordinary normal individual residing there. *Martin v. Williams*, 141 W.Va. 595, 93 S.E.2d 835 (1956). When such a nuisance exists, a court may enjoin the carrying on of such a business.

In *Parkersburg Builders Material Co. v. Barrack*, 118 W.Va. 608, 191 S.E. 368 (1937), this Court specifically indicated that a critical question in automobile salvage yard cases was whether the operation was being conducted in a strictly residential neighborhood. The Court indicated that such an operation was not *per se* a nuisance and that it could be considered a nuisance only when it was being conducted in a strictly residential neighborhood. The Court explained:

An automobile junk yard is not necessarily an objectionable place. The business of buying old automobiles, wrecking them and selling serviceable parts as such and junking the residue is an honorable and useful business. But an outdoor lay-out of a business of that kind necessarily is not pleasing to the view.

Such business, therefore, should not be located in a community of unquestioned residential character.

Where, however, a section of a municipality is not a clearly established residential community a court of equity will not be warranted in excluding therefrom as a nuisance an automobile-wrecking business merely on the ground of unsightliness.

*Parkersburg Builders Material Co. v. Barrack, Id.* 118 W.Va. at 613, 191 S.E. at 371. *See also Martin v. Williams, supra.*

In *Mahoney v. Walter*, 157 W.Va. 882, 205 S.E.2d 692 (1974), the Court reviewed the procedure followed by a circuit court in determining whether an automobile wrecking business was being conducted in a purely residential area and whether an injunction should be issued to enjoin its operation. The Court concluded that the circuit court was essentially vested with the fact-finding power and stated, in syllabus point 5 of the *Mahoney* case, that:

The determination of what constitutes a residential area, from which an offensive business may be barred by injunction, depends upon the surrounding facts and circumstances of each particular case and a trial court may consider the type of locality, the tradition as to business activity conducted there, and the particular activities complained of.

The Court also indicated, in syllabus point 6, that:

The findings of fact of a trial court are entitled to peculiar weight upon appeal and will not be reversed unless they are plainly wrong.

During the proceedings in the present case, a number of witnesses testified regarding the character of the Sherrard area. Gordon Golden, a real estate expert called by the appellants, testified that there was "a strip of a half a dozen or so roadside commercial ventures" in the village of Sherrard a short distance from the appellants' homes. He also testified that farm land abutted the appellants' properties to the south. At another point he stated: "This is a rural residential neighborhood. Sherrard is a rural community." David J. Kahlbaugh, one of the appellants, testified

that he owned thirty-seven acres, more or less, and that he had nine cows which roamed over his property. At another point he indicated that he owned farm equipment which he used on his property. Finally, Leslie Dean, another real estate expert, when asked whether the area in question was residential or rural, stated that it was definitely rural. He also stated that probably eighty percent of the land to the east, west, and south of the A–1 Auto Parts salvage yard operation was farm ground.

Also during the proceedings, George Miller and Gary Steven Harvey, two of the appellants, indicated that they began the construction of their homes after salvage yard operations had commenced in the A–1 Auto Parts location.

In view of the evidence that there were commercial operations in the area as well as farm land, this Court cannot conclude that the trial court was plainly wrong in concluding that the area in which the salvage yard was operated was a predominantly rural rather than a strictly residential area. As indicated by the authorities cited, the operation of a salvage yard should not be enjoined where it is conducted in an area which is not exclusively residential.

The judgment of the Circuit Court of Marshall County is, therefore, affirmed.

Affirmed.