425 S.E.2d 231

**TEAYS FARMS OWNERS ASSOCIATION, INC., a West Virginia Corporation, Plaintiff Below, Appellee,**

v.

**James R. COTTRILL and Mary Jean Cottrill, his wife, and Connie Irvin, Defendants Below, Appellants.**

**No. 21011.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 15, 1992.

Decided Dec. 18, 1992.

L. Alvin Hunt, Hunt & Wilson, Fred D. Clark, Charleston, for appellee.

Michael T. Chaney, Kay, Casto, Chaney, Love & Wise, Charleston, for appellants.

PER CURIAM:

James R. Cottrill, Mary Jean Cottrill, and Connie Irvin appeal from a final judgment of the Circuit Court of Putnam County holding that property owned by the Appellants is subject to restrictive covenants limiting the use of property within the Teays Farms subdivision. Such ruling disallows the continued operation of a horse stable and riding ring on the Appellants' property and enjoins the Appellants from using roadways within the subdivision for access to their property in furtherance of any business interests. The Appellants contend that the lower court erred in concluding that the restrictive covenants prohibit the use of the Appellants' property for operation of a stable and riding ring. We agree with the Appellants' contentions and hereby reverse the decision of the Circuit Court of Putnam County to the extent that it prohibited the Appellants' operation of a stable and prevented them from using the roadways within the subdivision in furtherance of their business activity.

I.

In 1974, T.P. Phillips and his wife incorporated Teays Farms, Inc. (hereinafter "the corporation"). The corporation subsequently acquired approximately 385 acres of undeveloped property in Putnam County. In 1976, Mr. Phillips and architect T.A. Galyean, Jr., incorporated a non-stock, non-profit corporation, Teays Farms Owners Association, Inc. (hereinafter "owners association"). The purpose of the owners association, specified in the articles of incorpo-

ration, was "to provide for the maintenance of recreation facilities, common areas and other community features of such land in the Subdivision as may be conveyed to the Association."

The property was developed in phases from 1976 through 1986. The corporation recorded various maps or plats depicting lots within the Teays Farms subdivision. The corporation also recorded declarations of covenants, conditions, restrictions, reservations, and easements. Each declaration referred to and was applicable to only a specific section or phase of the Teays Farms subdivision. From 1976 through 1986, the corporation sold many of the lots depicted on the recorded maps. The corporation reserved, however, the fee in all lanes, drives, and roads.

In 1977, Mr. Phillips constructed a stable and riding ring on a four-acre tract within the original 385 acres acquired. Although the four-acre tract in question is within the 385 acres, it was never depicted as part of the subdivision on any recorded map. From 1977 through 1985, Mr. Phillips occupied, used, and maintained the stable and riding ring. The owners association made no contribution to the maintenance of that facility. Mr. Phillips boarded horses for individuals, some of whom lived in the subdivision. Mr. Phillips also conducted the corporation's business and a realty company from the barn.

Mr. Phillips testified that the four-acre tract in question was never intended or considered to be a part of the common area or park area of the subdivision. Moreover, Mr. Phillips testified that he never intended the restrictive covenants to apply to the property on which the barn and riding ring were located.

In 1983, the corporation executed a deed of trust for the benefit of the Chemical Bank and Trust Company of South Charleston, conveying all corporate property, with the specific exception of the lots that had previously been conveyed and the lanes, drives, roads, and park areas within each section or phase of the subdivision. The deed did, however, grant the trustees the right to use such roadways. After a 1987 default on the payment of the note, the deed of trust was foreclosed upon and all property conveyed, including the four-acre tract in question, passed to the trustees of the Chemical Bank and Trust Company. By deed dated January 15, 1988, the bank, then the National Bank of Commerce of South Charleston, conveyed the property to the Appellants for $100,000. Furthermore, by quit claim deed dated September 7, 1988, the corporation quit claimed to the Appellants all of its interest in the property and the improvements thereon.

In January 1988, the Appellants began using the barn, riding ring, and surrounding area for the operation of a boarding stable. The Appellants plan to construct an addition to the barn to provide an indoor riding area, approximately twenty-one more stalls, and ancillary facilities. Access to the barn can only be achieved by use of Thoroughbred Road, one of the roadways within the Teays Farms subdivision.

In February 1988, a civil action was filed by the owners association seeking a declaration that the owners association, rather than the Appellants, owned the barn, riding ring, and the four-acre tract. The lower court rejected that contention but ruled that the restrictive covenants applicable to the Teays Farms subdivision also restricted the usage of the Appellants' property.[1] The Appellants were therefore enjoined from conducting or permitting to be conducted any business enterprise on the tract in question. The Appellants were also enjoined from using the roadways within the subdivision in furtherance of any business activity conducted on that tract.

In their assignments of error on appeal, the Appellants contend that the lower court erred in its determination regarding the application of the restrictive covenants and the Appellants' right to use the roads within the subdivision.

---

1. The restrictive covenants that prohibited buildings other than single family dwellings, stated all properties should be used only for residential purposes, and prohibited owners from conducting any business, profession, or trade on the properties.

## II.

This matter is presently before this Court due to an unfortunate occurrence; the developers of this 385 acre tract failed to explicitly identify the *raison d'etre* of the property on which the stable and riding ring were located or concisely define the relationship between that four-acre tract and the subdivision. The developers failed to provide any definite indication of whether this four-acre tract in question was to be considered a part of the subdivision subject to the restrictive covenants, a part of the subdivision not subject to the restrictive covenants, or simply a recreational area adjacent to the subdivision. This absence of any clear characterization of the property created a situation in which the four-acre tract, if considered within the subdivision, has technically been in violation of the subdivision's restrictive covenants since the origin of both the stable and the subdivision. Now, several years later, we are placed in the unenviable position of characterizing the property in question and its relationship to the subdivision.

When all tangible indicia of the legal status of property and the application of restrictive covenants fail to provide a resolution, attention must be shifted to the original intention of the parties. *See Allemong v. Frendzel*, 178 W.Va. 601, 363 S.E.2d 487 (1987). In syllabus point 2 of *Allemong*, we explained the following: " 'The fundamental rule in construing covenants and restrictive agreements is that the intention of the parties governs. That intention is gathered from the entire instrument by which the restriction is created, the surrounding circumstances and the objects which the covenant is designed to accomplish.' *Wallace v. St. Clair*, 147 W.Va. 377, 390, 127 S.E.2d 742, 751 (1962)." 178 W.Va. at 602, 363 S.E.2d at 488. Fortunately, the developer, T.P. Phillips, was available to testify regarding the original conception of the subdivision. Mr. Phillips informed the lower court that the four-acre tract in question was not intended to be a common area or park area of the subdivision and was not subject to the restrictive covenants applicable to the lots sold for residential purposes. Mr. Phillips' testimony in this regard is reinforced by the fact that the four-acre tract was not depicted on any of the plats or maps to which the restrictive covenants were specifically made applicable. The existence of a stable and riding ring was initially emphasized in advertising literature designed to attract potential home buyers to the subdivision. The stable and riding ring were to provide homeowners with the unique opportunity to board their horses near their homes. What was originally intended as an advantage of residing in this subdivision has now become a significant issue of contention.

In resolving this dispute, we must be cognizant of the homeowners' desire for continuity and adherence to the restrictive covenants. However, we must also recognize the ownership rights of the Appellants and must not subjugate their rights to the restrictive covenants of the subdivision if those restrictive covenants were not specifically made applicable to the four-acre tract. Mr. Phillips, the individual in perhaps the best position to explain the original conception of the subdivision, testified that he believed the stable area to be within the subdivision but not subject to the restrictive covenants. Furthermore, it appears from advertising disseminated during sales of individual lots that the stable area was considered either part of the subdivision or related to the subdivision in some manner. However, no filed court document specifically indicates that the four-acre tract is property to which the restrictive covenants are applicable. Again, that is consistent with Mr. Phillips' testimony regarding his original conception of the relationship between the stable area and the subdivision.

We conclude that the owners association is certainly entitled to reasonable assurance that the property in question will not be converted into some intolerable business activity. Yet the Appellants must also be provided with the opportunity to use their property in an appropriate manner. As explained above, the final analysis convinces us that while no filed document specifi-

cally includes this four-acre tract as subject to the restrictive covenants, this property must, as a practical matter, be considered as part of the Teays Farms subdivision. Consequently, we believe that while the restrictive covenants are not enforceable against this property, its status as part of the subdivision prevents unrestricted usage by the Appellants.[2] The Appellants must be limited to the use to which the property had already been placed, specifically a stable area and riding ring. With regard to any additions to the stable as contemplated by the Appellants, we conclude that such additions must be built, operated, and maintained in such a manner as not to constitute a nuisance in a pleasant residential community.

We do not believe that this limitation imposes an unreasonable burden upon the Appellants; nor do we believe that this resolution imposes an unreasonable burden upon surrounding property owners whose lots have been specifically identified as subject to the restrictive covenants. As a part of the Teays Farms subdivision and desirous of use of the subdivision's roadways, the Appellants must contribute their fairly apportioned share to road maintenance and will be permitted to use the subdivision's roadways. To the extent that this opinion alters or contradicts the determination of the lower court, the lower court's decision is reversed.

Reversed.

---

**2.** Unrestricted use would obviously also be prohibited by prevailing nuisance law. *See generally Hendricks v. Stalnaker,* 181 W.Va. 31, 380 S.E.2d 198 (1989) regarding what constitutes a nuisance. *See also Kahlbaugh v. A–1 Auto Parts,* 182 W.Va. 692, 391 S.E.2d 382 (1990) regarding the determination of what constitutes a residential area from which offensive business activity may be excluded. *Kahlbaugh* explains that whether the business will be permitted depends upon the surrounding facts and circumstances of each particular case, considering such factors as the type of locality, the tradition of business activity, and the particular acts complained of. 182 W.Va. at 694, 391 S.E.2d at 384.